## 56631. WILLIAMS v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant appeals his conviction of the offense of child molestation of the 12-year-old child of the woman he was living with. *Held:*

1. Shortly after his arrest for this offense the defendant employed counsel. On or about June 1, 1978, defendant's retained counsel was relieved and his present counsel was appointed by the court. Trial was set for the week of June 12, 1978 and defendant moved for a continuance on the basis of lack of adequate time to prepare a proper defense. The motion was denied. Trial was held on June 13, 1978. Defendant enumerates this denial as error.

A motion for continuance is addressed to the sound discretion of the trial judge and a denial will not be disturbed by this court unless it clearly appears that the judge abused his discretion. *Dutton v. State,* 228 Ga. 850 (2) (188 SE2d 794). This was not a complex case. There were few witnesses. Those witnesses were not widely separated. There is no fixed number of days that has been set forth as a criteria for counsel to utilize after his employment or appointment in a criminal case, and the trial judge must weigh the merits of each case then before

him and "determine what the ends of justice require." *Foster v. State,* 213 Ga. 601, 603 (100 SE2d 426). We find no abuse of discretion.

2. The defendant enumerates as error the failure of the trial court to suppress the results of a polygraph examination on the grounds that the defendant "did not freely and voluntarily consent to take said test . . . without being fully aware of the consequences of taking such examination."

Defendant's retained counsel testified at the suppression hearing that he mentioned the polygraph examination to the defendant and advised him of his rights in the matter and explained the consequences. The assistant district attorney prepared the stipulation for the defendant to sign, read it to him, and asked him if he had any questions. He did not. The defendant then read the stipulation and signed it. Before the defendant took the polygraph test he was again explained his rights by the GBI agent who administered the test. He was told no one could make him take the examination, he didn't have to take it if he didn't want to, he was entitled to an attorney, it must be of his own free will and accord and the results would be admissible in court. The defendant then discussed the matter with his attorney privately, returned to the examination room, was again advised of his rights and then signed the consent form containing all of his rights.

"[U]pon an express stipulation of the parties that they shall be admissible, the results of a lie detector test shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have." *State v. Chambers,* 240 Ga. 76 (239 SE2d 324). In a motion to suppress or exclude a polygraph examination, as in a Jackson-Denno hearing, the trial judge is the trier of fact and resolves any and all issues of truthfulness, credibility, and conflicts in the evidence. His decision will not be disturbed in the absence of obvious error. Cf. *State v. Swift,* 232 Ga. 535, 536 (207 SE2d 459); *Woodruff v. State,* 233 Ga. 840, 844 (213 SE2d 689). We find no abuse of discretion or obvious error. This enumeration is without merit.

3. The state called the alleged victim, age 12, as a

witness. Defendant objected to the procedure followed in determining the competency of the witness. The assistant district attorney asked the court if he desired her to ask the questions. He replied: "Well, you can ask her the questions and we'll see." Following the state's examination of the witness, the court asked the witness if she understood the importance of telling the truth, that the defendant's liberty depended upon her testimony, and inquired whether she understood the nature of an oath. After ruling the witness was qualified, the defendant moved for a mistrial on the basis that the court was required to determine the competency of the witness.

Under Code Ann. § 38-1610 (Code § 38-1610), "[t]he court shall, by examination, decide upon the capacity of one alleged to incompetent from . . . infancy." We find no objection to the procedure followed. The court did determine the issue of competency and he did, through examination, clarify any doubt he may have had following examination by counsel. The requisites of the Code were met. We find no fault in permitting counsel to question the witness — whether it be before or after the court questions the witness. This enumeration is meritless. Cf. *Geter v. State,* 231 Ga. 615, 617 (203 SE2d 195).

4. The last enumeration of error alleges that the court erred in failing to grant a mistrial following objection to the alleged victim's statement that her mother told her "to tell the Court that I just made all this up and tell — just so that they wouldn't get married."

Elaboration of other facts is necessary to place this testimony in perspective. The victim's mother was fifteen years old when she gave birth to the victim. She had been married three times. She was living with the married defendant when the series of molestations of the victim occurred. The victim complained to her mother about the defendant molesting her and having intercourse with her. The victim testified that her mother "just talked to him about it . . . And he said that he wouldn't promise that he wouldn't do it any more . . ." After that nothing more was said about it and the molestations continued.

The defendant testified that it was the 12-year-old victim who was the sexual aggressor and he "whipped her." He continually rebuffed her sexual advances and

she "would threaten me with something . . . I told her that I intended to marry her mother . . . she said, 'I'll see that you don't marry my mother.' " On cross examination he testified: "She said, 'If you don't leave my mother, I'll say that you've been going to bed with me.' " However, at a later time on cross examination he admitted that he had told the GBI agent that he "admitted to the mother that [he] had been having sex with this child." He stated the reason he told the mother this was "[t]he mother had tried to commit suicide every time I left, and that was the only way I figured I'd get to leave without her trying to kill herself."

The polygraph operator was of the opinion that the defendant was not truthful when he denied that he molested the victim.

Although we find no basis for admissibility of the statement complained of, we do not find harmful error. In view of the totality of the evidence of defendant's guilt — defendant's admission to the GBI agent that he had told the mother that he committed the sexual acts, and testifying that the child threatened him with telling this same story if he married her mother — just to get rid of him, but he told the mother he committed the acts to keep her from committing suicide because he was going to leave her, and the damning evidence of his failure to tell the truth during the polygraph examination, we find it highly probable that this error did not contribute to the jury verdict. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869).

*Judgment affirmed. Webb and McMurray, JJ., concur.*

SUBMITTED OCTOBER 16, 1978 — DECIDED NOVEMBER 7, 1978.

*William W. Keith, III,* for appellant.
*Charles A. Pannell, Jr., District Attorney, Patricia J. Croft, Assistant District Attorney,* for appellee.