## 37958. ELLIS v. THE STATE.

JORDAN, Chief Justice.

Barney Frank Ellis was convicted for the murder and robbery by force of Carl Cason, and was sentenced to life imprisonment. The victim was 104 years of age and was wheelchair-bound at the time he was strangled and bludgeoned to death. The state did not seek the death penalty.

Ellis appeals, contending that the trial court erred by denying his motion to suppress, by admitting autopsy photographs illustrating the victim's head injuries, and by allowing a witness to testify for the state whose name was not on the list of witnesses submitted to him before trial. We affirm.

1. Ellis was arrested in a public place about five hours after the victim's body was discovered. The items sought to be suppressed were taken from Ellis' person at the time of his arrest, and included two wallets identified as belonging to the victim and a check drawn on the victim's checking account.

The arresting officer had investigated the scene of the homicide, had interviewed the victim's landlady, and had participated in the autopsy conducted to determine the cause or causes of death. The victim's landlady had told the investigating officer that she had seen Ellis coming out of the victim's apartment the day before the body was discovered and that Ellis had told her he had locked the victim in the victim's apartment. She told the officer that the victim's apartment had been locked since the afternoon before the body was discovered even though the victim never locked his door.

The police officer had probable cause for Ellis' arrest, and was

justified in concluding that Ellis might discover the investigation was underway and flee before a warrant could be obtained. Hence, we are of the opinion that the "failure of justice" exception to Code Ann. § 27-207 (a) was applicable, and that in the circumstances of this case the officer was authorized to arrest Ellis without a warrant. *Borden v. State,* 247 Ga. 477, 478 (1) (277 SE2d 9) (1981); *Morgan v. State,* 241 Ga. 485, 486 (1) (246 SE2d 198) (1978); *Creamer v. State,* 150 Ga. App. 548, 461 (2) (258 SE2d 212) (1979). Accordingly, the trial court did not err in denying the motion to suppress the wallets and check obtained from Ellis' person after his arrest without a warrant.

2. Admission in evidence of autopsy photographs of the victim over objection was not error because the photographs tend to illustrate the location and nature of the victim's injuries and the cause of his death. *Mooney v. State,* 243 Ga. 373, 394 (6) (254 SE2d 337) (1979); *Lamb v. State,* 241 Ga. 10, 12 (2) (243 SE2d 59) (1978). The trial court excluded one photograph because it did not tend to shed light on the cause of death.

That the photographs were cumulative of other evidence presented is not grounds for their exclusion from evidence. *Gaylor v. State,* 247 Ga. 759 (2) (279 SE2d 207) (1981). That the photographs were gory and, hence, inflammatory is not cause for their exclusion from evidence. *Blankenship v. State,* 247 Ga. 590, 595 (8) (277 SE2d 505) (1981).

3. Ellis contends in his final enumeration of error that the trial court erred by allowing in evidence the testimony of a witness whose name had not appeared on the state's list of witnesses given to him upon his timely demand. Code Ann. §§ 2-111, 27-1403.

During the preliminary hearing, a state's witness, Ronald Patterson, testified that he had purchased from Ellis a pistol identified as belonging to the victim and had sold the pistol to one Buster Robinson. After the hearing, Patterson changed his address, and he was not relocated by the state until three days before trial. Upon relocating Patterson, the state was able to learn Robinson's real name, John H. Robinson, and to locate Robinson and interview him for the first time late in the afternoon of the day before jury selection commenced. The assistant district attorney attempted to reach defense counsel by telephone that afternoon, and succeeded in reaching him by telephone at 8:40 a.m. on the next morning. Jury selection started that afternoon at 2:30 p.m. The defense thus had time during which to interview Robinson but made no attempt to do so or to postpone the commencement of trial until an interview could be conducted.

The district attorney stated in his place in response to defendant's objection to the testimony of Robinson that although the

substance of Robinson's testimony (that Patterson sold him a certain pistol) was not newly discovered, because Patterson had testified to that fact during the preliminary hearing, yet Robinson's true name or identity and his whereabouts were not known until they were learned from Patterson after Patterson's whereabouts were rediscovered three days before the trial, and that it was not known whether or not Robinson would confirm Patterson's testimony until Robinson was interviewed during the afternoon of the day before jury selection commenced.

We have held that the "transcending purpose of . . . [Code Ann. § 27-1403] is to insure that an accused is not confronted at trial with testimony against him from witnesses whom he has not had the opportunity to interview prior to trial." *Hicks v. State,* 232 Ga. 393, 399 (207 SE2d 30) (1974). In *Hicks,* supra, we held that "What is required is that the list must be complete within a reasonable time before trial so that the defense may be adequately prepared. What constitutes a reasonable time before trial must depend upon the nature of the case, the number of the state's witnesses, the nature of their testimony, and any other factor which may logically bear upon the question." 232 Ga. at 399.

In the present case, both the prosecution and the defense knew of the possibility, after Patterson's testimony during the preliminary hearing, that a person named Buster Robinson had purchased the victim's pistol from Patterson. However, not until the day before the striking of the jury commenced did the state rediscover Patterson's whereabouts, thereby discovering the key to Buster Robinson's real name and his whereabouts. As soon as the state interviewed Robinson and learned that he would confirm Patterson's testimony regarding the sale of the pistol, the state attempted to contact the defense, and the state succeeded in contacting the defense early the next morning before jury selection was to commence that afternoon. An interview with Robinson to discover whether or not he would confirm under oath Patterson's testimony regarding the sale of the pistol could have been conducted by the defense in only a few minutes. However, the defense chose not to take advantage of the opportunity to interview Robinson but chose, instead, to object to his testimony when it later was introduced during the second day of the trial. We hold that in the particular circumstances of this case, the full and correct name of the witness Robinson was furnished to the defense within a reasonable time before trial.

Moreover, Robinson's testimony establishing an unbroken chain of custody of the pistol was not necessary to the state's case *(Ramey v. State,* 238 Ga. 111, 113 (4) (230 SE2d 891) (1976)) and merely was cumulative of Patterson's testimony that he had sold to

Robinson the pistol he had bought from Ellis. Accordingly, admission of Robinson's testimony was harmless even if it was error. *Huffaker v. State,* 119 Ga. App. 742 (1) (168 SE2d 895) (1969).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 1981.

*Bush & Wallace, Howard S. Bush, A. Stephenson Wallace,* for appellant.

*Sam B. Sibley, Jr., District Attorney, George Guest, Charles R. Sheppard, Assistant District Attorneys, Michael J. Bowers, Attorney General, George Weaver, Staff Assistant Attorney General,* for appellee.